UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TAMI GALLUPE,<br><br>                Plaintiff,<br><br>     v.<br><br>SEDGWICK CLAIMS MANAGEMENT SERVICES INC. et al.,<br><br>                Defendants. | CASE NO. C17-1775MJP<br><br>ORDER CONSTRUING PLAINTIFF'S MOTION FOR JUDGMENT UNDER RULE 52 AS A MOTION FOR SUMMARY JUDGMENT UNDER RULE 56;<br><br>GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;<br><br>DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT. |

THIS MATTER comes before the Court on Plaintiff's Motion for Judgment Under Federal Rule of Civil Procedure 52 (Dkt. No. 67) and Defendants' Motion for Summary Judgment (Dkt. No. 73). Having reviewed the Motions, the Responses (Dkt. Nos. 75, 76), the Replies (Dkt. Nos. 78, 79), and the related record, the Court hereby construes Plaintiff's Motion

for Judgment Under Federal Rule of Civil Procedure 52 as a Motion for Summary Judgment; GRANTS Plaintiff's Motion; and DENIES Defendant's Motion.

**Background**

Plaintiff Tami Gallupe brings this action pursuant to the Employment Retirement Income Security Act of 1975, 29 U.S.C. § 1001 et seq. ("ERISA") to recover short-term disability benefits, which Defendant Sedgwick Claims Management Services, Inc. ("Sedgwick") denied on the grounds that Ms. Gallupe was not "disabled" within the meaning of the Monsanto Company Disability Plan (the "Plan").

Ms. Gallupe began working for Monsanto as an Information Security Officer in 2015. (Dkt. No. 71, Administrative Record ("AR") at 76.) As described by Monsanto, this position required Ms. Gallupe to "[d]evelop, publish, and implement guidelines for the development and testing of security," "[p]rovide oversight and engineering recommendations into technical information security and privacy controls to ensure system security," "[o]versee, direct, and ensure delivery of information security and privacy training," and "[a]ct as a subject matter expert in enterprise security, security incident response, privacy, and compliance strategy." (AR 1040-1041.) In practice, the position involved "supervision of other employees; regular interaction with coworkers requiring effective and clear communication; regularly dealing with data or issues requiring attention to minute detail; prioritizing tasks; resuming attention after multiple interruptions; multi-tasking; and shifting between tasks and obtaining information from multiple sources and then synthesizing, integrating and utilizing such information to solve problems." (AR 679.)

While at Monsanto, Ms. Gallupe participated in the Plan, which was administered by Sedgwick as part of the Monsanto Company Employee Welfare Benefit Plan. (AR 30-56.) The

Plan provides benefits to participating employees who become disabled through sickness or accidental injury and defines "disabled" as:

> Disabled for Your Own Occupation means that you are unable to perform, with or without reasonable accommodation, the essential duties of your own occupation with Monsanto or any other appropriate position made available to you by Monsanto based on your experience, education, training and background.

(AR 55.)

In May 2017, Ms. Gallupe submitted a claim for short-term disability benefits for depression and anxiety. (AR 76.) After the claim was denied, Ms. Gallupe attempted to return to work in June 2017, but found she was unable to "concentrate or focus or communicate well with my coworkers" and "simply could not do [her] job." (AR 674, 675.) In July 2017, Ms. Gallupe took leave again and submitted a renewed claim for short-term disability benefits. (AR 225.) That claim also was denied. (AR 426-427.) In October 2017, Ms. Gallupe appealed the denial. (AR 664-671.) In November 2017, the appeal was denied. (AR 1075-1076.) Ms. Gallupe filed this suit thereafter.

**A. Ms. Gallupe's Medical Condition**

In May 2016, Ms. Gallupe's husband of nearly thirty years died unexpectedly, causing her weeks of "indescribable pain." (AR 673.) Other stressors in her life followed. (AR 674.) In May 2017, as the one-year anniversary of her husband's death approached, she began to suffer increasing symptoms of psychological distress:

> I found myself alone, lost, empty and unable to function at home or in my job. I did not want to have to take time off from work . . . but I found it was getting harder to focus or think clearly, and I was experiencing more frequent and increasingly stronger anxiety attacks. At times my heart would start racing so fast that it felt like I was choking on it, and I would start coughing or have to take my asthma rescue inhaler to keep from having my throat close. This was terrifying.

(AR 673.)

On May 3, 2017, Ms. Gallupe was evaluated by Maria Kirkpatrick, PA-C. (AR 104-108.) Ms. Gallupe reported anxiety, panic, chest pain and palpitations, shortness of breath, and trouble focusing and processing information, and explained that it could "take her 4 hours to answer an e-mail because she has trouble focusing." (AR 104.) Ms. Gallupe reported that she had thoughts of suicide and believed that "she would be better off dead," but would not follow through for religious reasons. (Id.) She also indicated that she was "adamantly opposed" to taking any prescription medications, including medications for depression or anxiety, having seen her late husband struggle with addiction. (AR 104, 107.) Ms. Kirkpatrick observed that Ms. Gallupe was "anxious, depressed, and tearful." (AR 102.) Ms. Kirkpatrick administered the Generalized Anxiety Disorder Assessment ("GAD-7") and the Patient Health Questionnaire ("PHQ-9"). (AR 104-105.) Ms. Gallupe's GAD-7 score of 21 indicated "severe" anxiety, while her PHQ-9 score of 27 indicated "severe" depression. (AR 104-105, 677-78.) Ms. Kirkpatrick diagnosed Ms. Gallupe with "grief reaction with prolonged bereavement." (AR 107.) Ms. Kirkpatrick submitted an Attending Physician Statement to Sedgwick on May 5, 2017, detailing her findings and certifying that Ms. Gallupe was unable to work from May 3, 2017 to July 4, 2017. (AR 100-103.)

On May 16, 2017, Ms. Gallupe saw clinical psychologist Lucretia Hyzy Krebs, M.D. (AR 546.) Ms. Gallupe reported symptoms of depression including "low mood; tearfulness; loss of interest or pleasure; feelings of being overwhelmed with responsibilities; sleep disturbance; and fatigue" and symptoms of post-traumatic stress disorder including "recurrent, involuntary, and intrusive distressing memories and thoughts about her husband and their last phone conversation; persistent feelings of guilt; problems with concentration; irritability; sleep disturbance; recurrent distressing dreams; and general negative alterations in cognitions or

mood." (Id.) Dr. Krebs diagnosed Ms. Gallupe with Adjustment Disorder with Mixed Anxiety and Depressed Mood, and sought to rule out Posttraumatic Stress Disorder. (Id.) In her treatment plan for Ms. Gallupe, Dr. Krebs identified objectives including "[t]o return to an acceptable level of effective social and occupational functioning" and "[t]o be able to focus and concentrate at work and return to previous level of productivity." (AR 547.)

Dr. Krebs submitted an Attending Physician Statement to Sedgwick on May 18, 2017, detailing her findings and certifying that Ms. Gallupe was unable to work from May 4, 2017 to July 5, 2017. (AR 129-131.)

Dr. Krebs submitted a treatment plan and case notes to Sedgwick on May 30, 2017 explaining her findings in further detail. (AR 157-164.)

Ms. Gallupe continued to see Dr. Krebs regularly in May and June 2017. (AR 678.)

Dr. Krebs submitted a Mental Health Assessment of Ability to Do Work Related Activities to Sedgwick on July 14, 2017 indicating that Ms. Gallupe's anxiety worsened upon her return to work in June 2017 and recommending that she be considered "totally disabled" from July 6, 2017 to September 6, 2017. (AR 411-412.)

In addition to Ms. Kirkpatrick and Dr. Krebs, Ms. Gallupe also saw licensed social worker John Bruels, LICSW on May 17 and 19, 2017 and her primary care physician, Patsy Lazarous, M.D. on May 18, 2017. (AR 169-212.) Mr. Bruels noted her GAD-7 score of 21 and PHQ-9 score of 24, and stated that "the severity of her symptoms warrant severe depression." (AR 180.) Mr. Bruels diagnosed Ms. Gallupe with "severe single current episode of major depressive disorder, without psychotic features" (AR 570, 595) and indicated that her symptoms had a "significant impact" on her work performance. (Id.) Dr. Lazarous noted that Ms. Gallupe appeared to be "very depressed and tearful" and diagnosed "grief reaction" and a severe episode

of major depressive disorder. (AR 191.) Dr. Lazarous recommended starting SSRIs (a type of prescription antidepressant), but noted that Ms. Gallupe was "very hesitant" due to her concerns about her late husband's addiction to prescription medications. (Id.)

### B. Sedgwick's Review and Denial of Benefits

Ms. Gallupe's disability claim was initially denied by Sedgwick on May 15, 2017, based upon "insufficient documented objective medical evidence of disability." (AR 121-122.) In particular, the denial letter noted that Ms. Gallupe "declined the need for medications, which would indicate a lack of severity." (AR 121.)

Ms. Gallupe's renewed claim was denied on July 31, 2017. (AR 426-427.) In particular, the denial noted that:

> Although it is indicated that you have anxiety, excessive worry, depressed mood, and a difficult time with focus and concentration, the medical information indicates your condition has been ongoing. It is noted that your husband passed away over a year ago, but this is unchanged from your history in which you were able to perform a sedentary job prior to your time away from work . . . You are declining medication management with a Psychiatrist, and there is no referral noted to an intensive outpatient treatment program or partial hospitalization treatment program. You are only meeting with a therapist once a week, and these meetings could be scheduled around working hours. The medical information lacks severity of a condition in which you would be unable to continue the demands of an Information Security Office[r] which is a sedentary job primarily involving computer use.

(AR 426.)

Ms. Gallupe appealed the denials on October 23, 2017. (AR 664-671.) Along with her chart notes and related medical records (AR 673-728), the appeal included a declaration from Dr. Krebs, describing Ms. Gallupe's clinical course, her objective symptoms, and the impact of her symptoms on her functioning, and a declaration from Ms. Gallupe explaining the impact of her symptoms on her ability to work. (AR 675-681.)

Sedgwick submitted Ms. Gallupe's appeal and claim documents to the Network Medical Review Company, which engaged psychiatrist Tahir Tellioglu, M.D. as a peer reviewer. (AR 1057-1063.) With the exception of the declarations submitted by Ms. Gallupe and Dr. Krebs in connection with the appeal, which he deemed "after the review period," Dr. Tellioglu reviewed and summarized all of the visit notes and assessments in the record. (AR 1059-1060.) Dr. Tellioglu concluded that Ms. Gallupe's disability claim was not supported by "objective observable data," and explained:

> There is lack of elaboration of the extent of psychiatric symptoms and their impact on her work functioning. Her psychiatric symptoms were not severe enough to require treatment in a higher level of psychiatric care such as PHP (partial hospitalization) or IOP (intensive outpatient) during the review period. There is no evidence of altered sensorium, quantified cognitive dysfunction or loss of global functionality. Memory concentration and other cognitive abilities are not demonstrated to be impaired.

(AR 1061-1062.)

On November 21, 2017, Sedgwick denied Ms. Gallupe's appeal. (AR 1075-1076.)

## Discussion

### I. Legal Standard

ERISA provides that a qualifying plan "participant" may bring a civil action in federal court "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008). There is no dispute that Ms. Gallupe is a participant under a qualifying plan, and is entitled to bring this suit under ERISA.

### A. Applicable Standard of Review

Initially, the parties dispute whether review should be *de novo* or for abuse of discretion. ERISA benefit determinations are reviewed *de novo*, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the default standard of review is for abuse of discretion. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); see also Stephan v. Unum Life Ins. Co. of Am., 697 F.3d 917, 923-24 (9th Cir. 2012).

Here, the Plan undoubtedly grants Sedgwick discretionary authority to determine eligibility for benefits or to construe its terms: The Plan describes Sedgwick as a named fiduciary with "discretionary authority to interpret the Plan," and states that Sedgwick has "sole discretion" to decide whether claimants are entitled to disability benefits. (AR 44, 52; see also Dkt. No. 49.) While Ms. Gallupe contends that *de novo* review is appropriate due to a series of "procedural violations," an administrator's failure to comply with procedural requirements "ordinarily does not alter the standard of review." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 971 (9th Cir. 2006) (citation omitted). In this regard, *de novo* review is only appropriate where an administrator with discretionary authority under a plan engages in "wholesale and flagrant violations of the procedural requirements of ERISA" or "in other words . . . fail[s] to comply with virtually every applicable mandate of ERISA." Id. (citations omitted). Because this case does not fall into "that rare class of cases" so as to alter the standard of review, the Court will review Sedgwick's benefits denial for abuse of discretion.[1] Id. at 972.

---

[1] Ms. Gallupe contends that the definition of "disability" set forth in the Plan is not the same as that recited in Sedgwick's denial letter. (See Dkt. No. 67 at 3; see also AR 55, 318.) However, other than Sedgwick's additional requirement that a claimant be under "[t]he regular care and attendance of a licensed Physician," there is no material difference between the

**B. Rule 52 or Rule 56 Motion**

The parties have filed cross-motions under Rule 52 and Rule 56. Where review is *de novo*, a Rule 52 motion appears to be the appropriate mechanism for resolving the dispute. See, e.g., Rabbat v. Standard Ins. Co., 894 F. Supp. 2d 1311, 1314 (D. Or. 2012) ("[W]hen applying the *de novo* standard in an ERISA benefits case, a trial on the administrative record, which permits the court to make factual findings, evaluate credibility, and weigh evidence, appears to be the appropriate proceeding to resolve the dispute."); Lee v. Kaiser Found. Health Plan Long Term Disability Plan, 812 F. Supp. 2d 1027, 1032 n.2 (N.D. Cal. 2011) ("*De novo* review on ERISA benefits claims is typically conducted as a bench trial under Rule 52.") (citation omitted). However, where review is for abuse of discretion, it appears that Rule 56 is the appropriate "conduit to bring the legal question before the district court." Harlick v. Blue Shield of Cal., 686 F.3d 699, 706 (9th Cir. 2012) (citing Nolan v. Heald College, 551 F.3d 1148, 1154 (9th Cir. 2009)); see also Bartholomew v. Unum Life Ins. Co. of Am., 588 F. Supp. 2d 1262, 1265-66 (W.D. Wash. 2008) ("The administrative record submitted in conjunction with [the] litigation exists as a body of undisputed facts," although "the conclusions to be drawn from those facts are definitely in dispute.")[2].

The Court will resolve the dispute under Rule 56, and will construe the arguments made in the briefing on the Rule 52 motions as though they were made under Rule 56.

---

definitions, and it does not appear that Ms. Gallupe was prejudiced by application of Sedgwick's. The Court does not consider this a reason to apply a heightened standard of review.

[2] The Court notes that "[t]raditional summary judgment principles have limited application in ERISA cases governed by the abuse of discretion standard" and "the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." Stephan, 697 F.3d at 929-30 (citing Nolan, 551 F.3d at 1154).

## II. Ms. Gallupe's Claim for Disability Benefits

In determining whether a plan administrator abuses its discretion, the district court asks whether it is "left with a definite and firm conviction that a mistake has been committed." Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 676 (9th Cir. (citation omitted). The "administrator's interpretation of the plan 'will not be disturbed if reasonable." Id. at 675 (quoting Conkright, 559 U.S. at 508). This reasonableness standard requires deference to the administrator's benefits decision unless it is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id. at 676. In addition, the Court is to weigh "procedural irregularities" in determining whether an administrator's decision was an abuse of discretion. See Abatie, 458 F.3d at 972 (citation omitted). Such procedural irregularities include whether the administrator (1) provided inconsistent reasons for the denial, (2) failed to adequately investigate the claim or to ask the claimant for necessary evidence, or (3) failed to credit a claimant's reliable evidence. Id. at 968-69 (citations omitted). Other factors include whether the plan administrator (4) had a meaningful dialogue with the claimant in deciding whether to grant or deny benefits or (5) took the claimant's doctors' statements out of context or otherwise distorted them in an apparent effort to support a denial of benefits. Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863, 873 (9th Cir. 2008).

Ms. Gallupe contends that Sedgwick abused its discretion by failing to credit her reliable evidence, failing to examine her in person, and failing to consider her job description in its disability determination. The Court's review of Sedgwick's decision is limited to the AR. Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 632 (9th Cir. 2009) (citations omitted). Having considered the AR in its entirety, the Court finds that there was overwhelming evidence that Ms. Gallupe was totally disabled from May 4, 2017 through June 18, 2017 and from July 6,

2017 through September 4, 2017. Based upon this evidence, and based upon the following procedural errors, the Court finds that Sedgwick's denial of benefits was unreasonable and therefore an abuse of discretion:

**A. Sedgwick Failed to Credit Reliable Evidence**

**1. Opinions of Treating Physicians**

Both Sedgwick and Dr. Tellioglu rejected the opinions of each of Ms. Gallupe's treating physicians indicating that she was totally disabled, as well as other evidence in the record corroborating their opinions.[3] While plan administrators are not required to accord special weight to the opinions of a claimant's treating physicians, they may not "arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003). The Court finds that Sedgwick did just that.

Sedgwick claims that it "considered and credited the facts, records, and observations of these medical professionals" and found "affirmative evidence in the record indicating that Plaintiff could work." (See AR 121-122, 426-427, 1075-1076; Dkt. No. 73 at 16-17; Dkt. No. 75 at 16-17.) However, Sedgwick's "affirmative evidence" is limited to irrelevant or unsupported inferences from the record. In any event, Sedgwick fails to explain anywhere in its denial how its alleged "affirmative evidence" informs its conclusion that Ms. Gallupe was not disabled during the claim period.

---

[3] While Sedgwick maintains that Dr. Tellioglu considered "[a]ll information submitted," his report appears to indicate that he did not meaningfully consider Ms. Gallupe's October 3, 2017 declaration or Dr. Krebs' October 10, 2017 declaration, which were both submitted in support of the appeal. (See AR 1059-1060.) Dr. Tellioglu's report lists and summarizes each record he reviewed in chronological order up until September 15, 2017, and then states that the "rest of the documents are after the review period." (Id.) Dr. Tellioglu's report does not refer to the contents of either declaration. (Id.)

For example, Sedgwick first contends that Ms. Gallupe had worked for a year following her husband's death. However, there is no dispute that Ms. Gallupe's anxiety and depression worsened on the one-year anniversary of her husband's death, and Sedgwick does not explain how this factor bears upon the severity of her symptoms or her ability to work.

Second, Sedgwick contends that Ms. Gallupe could perform activities of daily living on her own and had normal thought, judgment, cognition, and memory. Quoting Dr. Tellioglu, the denial of the appeal states that the record contained a "lack of elaboration of the extent of psychiatric symptoms and their impact on her work functioning" and "no evidence of altered sensorium, quantified cognitive dysfunction or loss of global functionality." (AR 1075.) However, Dr. Krebs provided a detailed explanation of Ms. Gallupe's psychiatric symptoms and their impact on her ability to work as an Information Security Officer (i.e., "difficulty with concentration and focus, along with her physical and emotional fatigue, prevented her from being able to pay attention to detail or to deal with data or issues requiring attention to minute detail, to prioritize tasks, to organize and complete tasks, and to resume attention after multiple interruptions," "to make decisions and to attend to professional matters on a consistent and sustained basis," and "to effectively communicate and collaborate with coworkers due to her social withdrawal and isolation; low self-esteem and negative sense of self-worth; and continued mental distress"). (AR 677-679.) Neither Sedgwick nor Dr. Tellioglu addresses this narrative, let alone explain how it could be further elaborated upon. Moreover, neither Sedgwick nor Dr. Tellioglu explains why "altered sensorium, quantified cognitive dysfunction or loss of global functionality" are dispositive as to psychiatric disability, or why the PHQ-9 and GAD-7 scores are not "quantified" evidence of cognitive dysfunction.

Third, Sedgwick contends that Ms. Gallupe indicated that she could perform her job at "95 to 98%," but omits the complete context (i.e., her statement that her productivity at work "normally was 180%, lately has been 95-98 percent") which indicated that she was functioning nearly halfway below her normal capacity. (AR 104); see also Solien v. Raytheon Long Term Disability Plan #590, 644 F. Supp. 2d 1143, 1146 (D. Ariz. 2008) ("The plan administrator may not . . . pick and choose between portions of the medical record or ignore parts and use only those parts of the record which are favorable to a finding of no disability.") (citations omitted).

Fourth, Sedgwick contends that the fact that Ms. Gallupe declined medications and did not require "a higher level of psychiatric care such as PHP or IOP during the review period" indicate a lack of severity. (AR 1075.) However, Ms. Gallupe provided a cogent reason for declining prescription medications (i.e., her concerns over her late husband's addiction), and Sedgwick does not explain why the fact that she was not hospitalized or referred to inpatient treatment is a dispositive factor in determining psychiatric disability.

Critically, aside from these selective and out-of-context readings of the statements offered by Ms. Gallupe and her treating physicians and professionals, neither Sedgwick nor Dr. Tellioglu identifies any contradictory evidence concerning Ms. Gallupe's ability to work.

**2. Objective Evidence of Psychiatric Disability**

Sedgwick also contends, based upon Dr. Tellioglu's conclusion that there is "insufficient objective observable data . . . to support a psychiatric disability or any need for restrictions or limitations in the work setting[]" (AR 1061) that "the clinical data does not offer convincing documentation of a psychiatric disability." (AR 1075.) However, neither Sedgwick nor Dr. Tellioglu explains how in-person observations by Ms. Gallupe's treating physicians (e.g., that Ms. Gallupe was "often visibly distraught and tearful," that she "appeared increasingly fatigued,"

| | |
|---|---|
| 1 | etc.) and PHQ-9 and GAD-7 scores indicating "severe" depression are not "objective" evidence, |
| 2 | particularly in the context of a disorder that is inherently subjective and self-reported. (See AR |
| 3 | 517, 575, 608, 678-80); see also, e.g., Burnett v. Raytheon Co. Short Term Disability Basic |
| 4 | Benefit Plan, 784 F. Supp. 2d 1170, 1184 (C.D. Cal. 2011) (noting "the unique nature of |
| 5 | psychiatric disabilities, which often involve subjective complaints."); James v. AT&T West |
| 6 | Disability Benefits Prog., 41 F. Supp. 3d 849, 880-81 (N.D. Cal. 2014). (finding abuse of |
| 7 | discretion where administrator did not explain why examining physician's observations are not |
| 8 | "objective evidence"). |
| 9 | Sedgwick's failure to credit reliable evidence concerning Ms. Gallupe's disability |
| 10 | indicates an abuse of discretion. |

### B. Sedgwick Failed to Examine Ms. Gallupe

| | |
|---|---|
| 12 | Sedgwick relied upon the opinion of a non-treating, non-examining doctor to conclude |
| 13 | that Ms. Gallupe was not disabled during the claim period. While there is nothing "inherently |
| 14 | objectionable about a file review by a qualified physician in the context of a benefits |
| 15 | determination . . . a plan's decision to conduct a file-only review—especially where the right to |
| 16 | conduct a physical examination is specifically reserved in the plan—may, in some cases, raise |
| 17 | questions about the thoroughness and accuracy of the benefits determination." Bennett v. |
| 18 | Kemper Nat. Servs., Inc., 514 F.3d 547, 554 (6th Cir. 2008) (internal quotation marks and |
| 19 | citations omitted); see also Lavino v. Metro. Life Ins. Co., 2010 WL 234817, at *12 (C.D. Cal. |
| 20 | Jan. 13, 2010) ("Though the lack of an in-person examination is not determinative, it is a |
| 21 | relevant consideration, especially with respect to conditions that are not susceptible to objective |
| 22 | verification . . .") (citations omitted). |

While Sedgwick claims that (1) it "credited" the complaints and observations of Ms. Gallupe and her treating physicians and (2) "it would be nonsensical to require an in-person review of Plaintiff at a time when, by her own admission, she no longer suffered from any disability" (Dkt. No. 75 at 14-15), neither contention is compelling. First, Sedgwick's claim that it "credited" the observations of Ms. Gallupe and her treating physicians is belied by the fact that it ultimately discounted the disability opinions of *every* treating physician and professional, deferring instead to the opinion of a physician who never examined her in person and never had the opportunity to observe the effects of her depression and anxiety. Second, while it is true that Ms. Gallupe was no longer disabled when Dr. Tellioglu completed his file review, Sedgwick had ample opportunity to have her examined by a local physician prior to her appeal. That it did not do so, yet still complaints about a lack of objective evidence, indicates an abuse of discretion. See Mitchell v. Metro. Life Ins. Co., 523 F. Supp. 2d 1132, 1148 (C.D. Cal. 2007) ("This was an occasion when an independent medical examination was in order to determine the credibility of [the claimant's] evidence. [The plan] did not exercise this option, choosing instead to assert a lack of evidence without attempting to confirm for itself whether [the claimant] suffered from disabling conditions."); Lavino v. Metro. Life Ins. Co., 779 F. Supp. 2d 1095, 1113 (C.D. Cal. 2011) ("In the context of a psychiatric disability determination, it is arbitrary and capricious to rely on the opinion of a non-treating, non-examining doctor because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the claimant.") (citation omitted); Sheehan v. Metro. Life Ins. Co., 368 F. Supp. 2d 228, 255 (S.D.N.Y. 2005) ("Unlike cardiologists or orthopedists, who can formulate medical opinions based upon objective findings derived from objective clinical tests, the psychiatrist typically treats his patient's subjective symptoms.").

**C. Sedgwick Failed to Consider Ms. Gallupe's Job Description**

Finally, Sedgwick did not meaningfully assess "the necessary functions" of Ms. Gallupe's job before denying her claim, as it was required to do. See Lundquist v. Continental Cas. Co., 394 F. Supp. 2d 1230, 1250-51 (C.D. Cal. 2005) ("Clearly, in making a determination regarding 'disability' under the [plan], it is critical to accurately assess the necessary functions of plaintiff's specific job . . . Although [the plan] recognized that plaintiff viewed her job as stressful, it did not attempt to determine the necessary *functions* of that job or of her occupation.") (emphasis in original); Martin v. Continental Cas. Co., 96 F. Supp. 2d 983, 992 (N.D. Cal. 2000) ("As a matter of logic, it would be impossible to review plan language with respect to a claim without making some characterization of the demands of the claimant's job tasks.").

Under the Plan, "disability" means "that you are unable to perform, with or without reasonable accommodation, the *essential duties of your own occupation* . . ." (AR 55) (emphasis added). Accordingly, it would have been important for Sedgwick to understand "the essential duties" of Ms. Gallupe's job as an Information Security Officer. However, the record indicates that Sedgwick did not request a copy of Ms. Gallupe's job description until after it had already twice denied her claim (AR 1104), and did not meaningfully consider at any point how her duties would be impacted by her symptoms. For example, in its July 31, 2017 denial letter, Sedgwick summarizes Ms. Gallupe's position as "a sedentary job primarily involving computer use." (AR 426.) In his report, Dr. Tellioglu summarizes her position as "providing information security and privacy requirements into practices across business partners." (AR 1059.) Neither makes any effort to evaluate whether Ms. Gallupe's depression and anxiety would prevent her from performing the specific duties of her job, namely "supervision of other employees; regular

interaction with coworkers requiring effective and clear communication; regularly dealing with data or issues requiring attention to minute detail; prioritizing tasks; resuming attention after multiple interruptions; multi-tasking; and shifting between tasks and obtaining information from multiple sources and then synthesizing, integrating and utilizing such information to solve problems." (AR 679.)

Sedgwick's failure to meaningfully consider Ms. Gallupe's job description indicates an abuse of discretion.

## Conclusion

Having found that Sedgwick abused its discretion in denying Ms. Gallupe's claim for short-term disability benefits, the Court hereby ORDERS as follows:

(1) The Court GRANTS Plaintiff's Motion for Judgment Under Federal Rule of Civil Procedure 52, which it construes as a Motion for Summary Judgment, and DENIES Defendant's Motion for Summary Judgment;

(2) Defendants are directed to find that Ms. Gallupe was disabled within the meaning of the Plan and entitled to receive short-term disability benefits from May 4, 2017 through June 18, 2017 and from July 6, 2017 through September 4, 2017;

(3) Defendants are directed to pay Ms. Gallupe unpaid short-term disability benefits owing to her from May 4, 2017 through June 18, 2017 and from July 6, 2017 through September 4, 2017, including pre-judgment interest on all unpaid benefits; and

(4) Plaintiff may file a Motion for Attorney's Fees and Motion for Bill of Costs within ten (10) days of the date of this Order.

The clerk is ordered to provide copies of this order to all counsel.

Dated February 14, 2019.

Marsha J. Pechman
United States District Judge